UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


JAMES GREGORY POULIN,

     Plaintiff,

v.                                  CASE NO. 6:08-cv-299-Orl-31KRS

SUSAN JETER, et al.,

     Defendants.

_____


**<u>ORDER</u>**

This case is before the Court on Defendants' Motion to Dismiss Second Amended

Complaint or Alternatively, Motion for Summary Judgment (Doc. No. 98) and Plaintiff's

Response (Doc. No. 132).[1]  In accordance with *Griffith v. Wainwright*, 772 F.2d 822 (11th Cir.

1985), Plaintiff was notified by Order of the Court of his right to respond to Defendants'

motion for summary judgment and to file affidavits and other documents in opposition to

the motion (Doc. No. 103).[2]  Plaintiff was also informed that the failure to oppose the

---

[1] On August 24, 2010, Plaintiff asked the Court to treat a previously filed document that objected to the Defendant's assertion of the defense of qualified immunity as his response to the Motion to Dismiss or Alternatively, for Summary Judgment (Doc. No. 138). Although Plaintiff complains that he was not given time to complete or conduct discovery, the Court finds that Plaintiff's discovery requests would not support his claims for relief.

[2] A federal district court is required to comply with the notice and hearing requirements of Federal Rules of Civil Procedure 12(b) and 56(c) when a motion to dismiss is converted into a motion for summary judgment. *See Herron v. Beck*, 693 F.2d 125, 126 (11th Cir. 1982). A court should ensure that a pro se litigant receives proper notice that the motion is being treated as a motion for summary judgment and that he has the right to file affidavits and other responsive material and that the failure to respond may result in the entry of summary judgment against him. *Christy v. Sheriff of Palm Beach County*, 288 F. App'x 658, 664-65 (11th Cir. 2008) (citing *Herron*, 693 F.2d at 127)); *Eubank v. Leslie*, 201 F. App'x 837, 845-46 (11th Cir. 2006).

motion could result in judgment for the movant without further proceedings. *Milburn v. United States*, 734 F.2d 762 (11th Cir. 1984). Plaintiff's objections, which the Court treats as a response to the motion for summary judgment, contain approximately 350 pages, including exhibits and affidavits (Doc. Nos. 132 and 133). Because Plaintiff has filed affidavits and other documents in opposition to Defendants' motion, the Court treats the motion as a motion for summary judgment and not a motion to dismiss. As discussed hereinafter, Defendants' motion for summary judgment is granted.

## I.      *Factual Background*

Plaintiff James Gregory Poulin ("Plaintiff"), a prisoner in the State of Florida proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Commander Susan Jeter ("Jeter") and Sheriff Jack Parker ("Parker"). *See* Doc. No. 86. Plaintiff's complaint arises out of his incarceration at the Brevard County Detention Center ("BCDC" or "Jail"). *Id.* Plaintiff alleges approximately twenty-five claims in his second amended complaint. *Id.* at 8-9. Specifically, Plaintiff contends that his right to access the courts, to mail and publications, and to access the media have been violated because (1) he cannot get documents notarized, (2) he cannot get copies of incomplete grievances, (3) his legal mail is being opened outside of his presence, (4) he is unable to obtain legal materials or supplies, (5) he is unable to study his criminal case, (6) the Jail does not allow newspapers or television, and (7) the Jail does not allow inmates to receive newspaper clippings and internet printouts in the mail. *Id.* Plaintiff also alleges the Jail officers have retaliated against him for filing a § 1983 complaint.

Next Plaintiff complains of the conditions of his confinement and argues that (1) the Jail will not provide him shampoo and instead he must wash his hair with soap, (2) the windows in his cell do not allow natural light, (3) he is unable to have contact visits with his mother, (4) he is being deprived of meaningful exercise, (5) his cell is unsanitary, (6) he is not given cleaning supplies, (7) the Jail is feeding inmates improper food that is not nutritious, (8) he has been fed the same food for three years, (9) there is a lack of educational pursuits or games, (10) he is not allowed a pillow, which is causing the deterioration of his joints, bones, and muscles, (11) transportation to and from the Jail is unsafe and painful, and (12) the Jail does not provide enough clothing, such as t-shirts and underwear. Plaintiff also notes that he has been deprived of his personal property, consisting of gym shorts, sneakers, and sandals. Furthermore, Plaintiff states that the Jail does not provide meaningful medical or dental care.

Plaintiff also contends that the Jail improperly mixes unscreened inmates from the Florida Department of Corrections ("DOC") with the pretrial detainees. Plaintiff states that the Jail is thus failing to protect pretrial detainees from harm from the DOC prisoners.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c)(2), summary judgment shall be granted if it appears that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rule 56(e)(2) further provides as follows:

3

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Essentially, the nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  If, after the movant makes its showing, the nonmoving party brings forth evidence in support of its position on an issue for which it bears the burden of proof at trial that "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250 (citations omitted).

## III.   *Discussion*

In his complaint, Plaintiff alleges numerous violations of his First and Fourteenth Amendment rights.[3]   Defendants argue that the second amended complaint should be dismissed, or alternatively, that they are entitled to summary judgment.  Specifically, Defendants contend that they are entitled to qualified immunity from Plaintiff's claims, that

---

[3] Because Petitioner is a pre-trial detainee, his claims that would normally arise under the Eighth Amendment instead are analyzed under the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  However, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

4

Plaintiff has not alleged any actual physical injury, and that they did not create or permit any policy or custom that authorized a violation of Plaintiff's constitutional rights.

### A.    *Qualified Immunity*

Defendants argue they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 129 S. Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (quotation omitted).  "The purpose of qualified immunity is to allow officials to carry out discretionary duties without the chilling fear of personal liability or harrassive litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *McCullough v. Antolini,* 559 F.3d 1201, 1205 (11th Cir. 2009) (citations omitted) (quotations omitted).  To receive qualified immunity a defendant must first prove he or she was acting within the scope of his or her discretionary authority.  *See Vineyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

Once a defendant shows that he or she was acting within his or her discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. *Lumley v. City of Dade City*, 327 F.3d 1186, 1194 (11th Cir. 2003).  The Supreme Court has set forth a two-part test for the qualified immunity analysis.  First, a court must determine "whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).  If Plaintiff's version of the facts sets forth the

violation of a constitutional right, the next step is to ask whether the right was clearly established at the time of the alleged conduct.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  It is within a court's discretion to decide which prong of the qualified immunity analysis to address first.  *See Pearson*, 129 S. Ct. at 818.

As an initial matter, pursuant to the allegations in Plaintiff's second amended complaint and the affidavits submitted by Defendants, the Court finds that Defendants Jeter and Parker were acting in their discretionary authority, as Jail Commander of the BCDC and Sheriff of Brevard County, respectively, to the extent that they approved the policies and procedures in the Jail about which Plaintiff now complains.  Defendant Parker, as the elected Brevard County Sheriff, has ultimate supervisory authority with respect to all correctional officers employed at the Jail (Doc. No. 98, Ex. 1 at 1).  Moreover, Parker has final approval authority over all policies and procedures of the Jail.  *Id.* at 2.  Defendant Jeter acts to oversee the Jail and has authority to recommend changes to existing policies and procedures at the Jail, but does not have final approval authority over such changes (Doc. No. 98, Ex. 2 at 1).  All of the alleged violations took place while Parker and Jeter were performing their official duties as Sheriff and Jail Commander.

Thus, the resolution of the qualified immunity question requires a determination of whether Plaintiff has alleged, in any of his claims, the deprivation of an actual constitutional right at all, and if so, whether the right was clearly established at the time of the alleged violation.

B.      *First Amendment Claims*

Plaintiff alleges that Defendants have committed several First Amendment violations.  Specifically, Plaintiff first contends that Defendants have violated his right to access the courts, his right to legal mail and correspondence, and his right to access the media.  Moreover, Plaintiff states that Defendants are now retaliating against him for filing the instant civil rights complaint.

### 1.  *Access to Courts*

It is well-recognized that inmates have a constitutional right of access to the courts, which mandates that they be provided with "paper and pen to draft legal documents with notarial services to authenticate them, and with stamps to mail them" and reasonable access to law libraries or persons trained in the law.  *Bounds v. Smith*, 430 U.S. 817, 825-28 (1977).  This right requires institutions to ensure that an inmate has "a reasonable adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."  *Id.* at 825.

To state a claim for denial of access to courts, a plaintiff must not only show that prison authorities failed to provide access or assistance, but also that the failure "hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996).  As such, the United States Supreme Court has clarified that prisoners' contentions of deprivations of access to courts must show actual injury as a "constitutional prerequisite." *Id.*; *see also Bass v. Singletary*, 143 F.3d 1442, 1445 (11th Cir. 1998) ("The doctrine of standing requires that an inmate alleging a violation of the right to access to the courts must show an actual injury.").  An inmate must prove that the defendants' actions hindered or frustrated his

efforts to pursue a non-frivolous direct criminal appeal, habeas petition, or civil rights action. *Lewis*, 518 U.S. at 354-56. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355. Examples of actual injury include "missing filing deadlines or being prevented from presenting claims." *Wilson v. Blankenship*, 163 F.3d 1284, 1290 n.10 (11th Cir. 1998) (citing *Lewis*, 518 U.S. at 348).

Here, Plaintiff has failed to allege sufficient facts demonstrating that Defendants have deprived him of meaningful access to the courts. First, Plaintiff contends that the Jail will not notarize documents unless a prisoner has a driver's license or another form of identification on file (Doc. No. 86 at 11). Plaintiff contends that this resulted in unnecessary aggravation as he had to contact the state court clerk in Titusville, Florida, so that he could ensure his state court complaint was filed. *Id.* Defendants state that the Jail does provide notary services to inmates, however, the inmate must have identification on file (Doc. No. 98, Ex. 2 at 7-8.) Plaintiff has not demonstrated an actual injury and merely states that he was subject to unnecessary aggravation. Although in his response Plaintiff claims that his claims would not be legally binding if they are not notarized, such is not the case. Section 1746, Title 28 of the United States Code allows for the filing of documents in the federal courts without using a notary. The section states that a Plaintiff can sign complaints and affidavits "under penalty of perjury." *Id.* Furthermore, under section 92.525, Florida Statutes, a document can be verified by signing it under the penalties of perjury. Thus, Plaintiff has not demonstrated that a violation of his constitutional rights occurred.

8

Second, Plaintiff contends that the Jail has a policy in which they do not give inmates copies of grievances until an officer has responded to the grievance (Doc. No. 86 at 13). Defendants concede that the Jail does not provide photocopies of grievances until they are processed and answered (Doc. No. 98 at 4). Petitioner has failed to allege a violation of a constitutional right. There is no constitutional right to a grievance procedure in a prison or jail, and the state creation of such a procedure does not give rise to a substantive constitutional right. *See*, *e.g.*, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991); *Cranford v. Hammock*, case no. 1:09-cv-070-MP-AK, 2010 WL 916031, at *2 (N.D. Fla. Mar. 11, 2010). Therefore, it logically follows that liability cannot be predicated upon a claim that defendants failed to provide a prisoner with copies of grievances. *See Crum v. Thomasville County Jail*, case no. 7:07-cv-126 (WLS), 2007 WL 2570781, at *8 (M.D. Ga. Aug. 31, 2007) (citing *Flick*, 932 F.2d at 729). Moreover, Plaintiff has not alleged that he was unable to maintain a court action because of the failure to obtain copies of his grievances. Accordingly, Plaintiff has not stated a viable access to courts claim.

Plaintiff next alleges that he is being denied *pro se* or indigent packages, which include legal supplies, due to Defendants' new policies (Doc. No. 86 at 14). Furthermore, Plaintiff states that the legal supplies packages given to inmates are inadequate. *Id.* at 15. Pursuant to the Jail Inmate Handbook and the Brevard County Sheriff's Office Policy 600.12A (Doc. No. 98, Ex. 5 & 6), *pro se* or indigent inmates are provided correspondence packages, free of charge, two times per month. The first packages consists of one pen, two

stamped envelopes, ten sheets of writing paper, and one yellow envelope. *Id.* The second package contains the same materials, with the exception of a pen. *Id.* Moreover, the Jail provides postage, without delay, for all legal mail, if it is properly marked as such, for any indigent inmate. *Id.* An inmate is considered indigent if his account balance is below $1.00 for a period of 30 days. Ex. 5. Inmates who are not indigent are charged the commissary rate for supplies. *Id.* Defendants note that this policy was updated on June 8, 2009 (Doc. No. 98 at 6).

Plaintiff states that he lost his civil suits in case numbers 6:08-cv-1651-Orl-31KRS, 6:08-cv-2174-Orl-35GJK, and 6:09-cv-606-Orl-35GJK, because the lack of supplies rendered him unable to file a second amended complaint. *Id.*; *see also* Exhibit D attached at Doc. No. 86. Plaintiff filed one grievance, on September 10, 2008, complaining about the Jail policy requiring him to pay for legal supplies because he had money in his account. Exhibit D. Plaintiff also filed grievances in October, November, and December 2009, and in January and February 2010, complaining that he should have been added to the list of prisoners who were to receive indigent or *pro se* packs (Doc. No. 123 at 48). Plaintiff notes that the problem was then corrected and he has been receiving the *pro se* packs of writing supplies. *Id.*

While Plaintiff states that three of his federal cases were dismissed because of the lack of legal supplies, Plaintiff has not shown that Defendants' actions hindered or frustrated his efforts to pursue non-frivolous civil rights actions. Although missing filing deadlines is a type of actual injury, *see Wilson*, 163 F.3d at 1290 n. 10, the Court finds that

the record is devoid of facts establishing a connection between Defendants' alleged interference with Plaintiff's access to the courts and this Court's decision to dismiss any of Plaintiff's cases.  In case 6:08-cv-1651-Orl-31KRS, the case was dismissed without prejudice on February 5, 2009, for failing to file a prisoner consent form and financial statement, which does not relate to the lack of legal supplies, as the Court provides the prisoner consent form to inmates.  Case 6:08-cv-2174-35GJK was dismissed without prejudice on February 2, 2009, after Plaintiff failed to comply with the Court's order asking Plaintiff to advise the Court if his claims were the same as those filed in the instant case and in case 6:08-cv-1651-Orl-31KRS.  Although Plaintiff failed to comply with the order, Plaintiff had filed numerous complaints with the same claim, thus indicating that his filings in that case were duplicative of his other cases.

In case 6:09-cv-606-Orl-35GJK, the Court dismissed the case without prejudice for failing to file an amended complaint.  Plaintiff filed four separate complaints against the same Defendants he had sued in the instant case,  in case 6:08-cv-1651-Orl-31KRS, and in case 6:08-cv-2174-Orl-35GJK.  Again, while Plaintiff failed to comply with a Court order, allegedly for lack of supplies, Plaintiff had again filed duplicative complaints. Based on the above, there is no indication that Defendants' policies on legal supplies, which allegedly interfered with Plaintiff's access to the courts, caused Plaintiff to suffer any harm or prejudice in a meritorious action.  Plaintiff has not established a violation of a constitutional right with respect to this claim.

Finally, Plaintiff contends that he cannot research or "study" his criminal case (Doc. No. 86 at 16).  Plaintiff notes that he has an attorney, but his attorney refuses to be his "legal secretary" and provide him with information he requests, as it would cost too much to print and mail the "volumes" of cases that he requests.  *Id.*  Defendants have attached the affidavit of Daniel S. McAllister, who has been the law librarian at the Jail since September 2006 (Doc. No. 98, Ex. 4 at 1).  McAllister states that only inmates who are appointed by the court to act *pro se*, or who are appealing a sentence, contesting the conditions of confinement or seeking to file and maintain a civil case are authorized to have access to law library information.  *Id.* at 2.  As Plaintiff is not representing himself in his criminal case in the state court, he is not authorized to access the law library.  Plaintiff cannot show any actual injury as there is no constitutional right to access a law library if an inmate is represented by counsel.[4]  *See Wilson*, 163 F.3d at 1291 (finding no actual injury regarding the plaintiff's claim that he had no access to a law library as plaintiff was represented by counsel in his criminal case); *Keenan v. Hall*, 83 F.3d 1083, 1093-94 (9th Cir. 1996) (prison inmates have a constitutional right to either assistance of a lawyer or access to a law library); *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996).

Moreover, Plaintiff has not alleged that he was unable to maintain some other action because he was not allowed access to the law library.  In fact, McAllister notes that until

---

[4] Plaintiff notes that he understands he has no constitutional right to both counsel and access to a law library, but states that he wishes the Court would "make provisions for men like himself that have an aim to keep counsel honest and on [the] mark" because "[l]awyers are human and [are] apt to make mistakes, and that goes double for overworked public defenders who are trying to push out their caseload as fast as possible - not to forget that counsel is sometimes young and inexperienced in [the] law and procedures" (Doc. No. 86 at 17).

Plaintiff was appointed counsel on May 14, 2009, he provided Plaintiff with over 23,000 pages of printed material from Westlaw pertaining to his criminal case.  Ex. 4 at 6.

The Court finds that Plaintiff has not demonstrated that he was deprived of a constitutional right regarding these claims.

### 2.    Right to Mail and Correspondence

Plaintiff next asserts that his right to mail and correspondence is being violated because his legal mail was opened several times outside his presence (Doc. No. 86 at 13). Moreover, Plaintiff alleges that his family has tried to send him newspaper clippings and internet printouts or postcards of women, none of which he has ever received. *Id.* at 34-35.

 Defendants attest that legal mail was opened and screened for contraband for a short period of time after a serious security breach in which a concealed pistol or derringer was found in legal mail (Doc. No. 98 at 5, Ex. 2 and 6).  Specifically, Defendant Jeter states that a package of legal mail containing a substantial quantity of folded paper also contained a two-shot derringer.  Ex. 2 at 7.  Jeter also notes that this package made it through the mailroom and by fortuitous circumstance was discovered by a housing officer prior to being turned over to the inmate.  *Id.*  Defendants also attached Jail Policy 600.12A, which states that the Jail policy is for officers to scan the mail for contraband. Ex. 6.

Prison inmates have a constitutional right to have their properly marked legal mail opened in their presence. *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *Al-Amin v. Smith*, 511 F.3d 1317, 1331 (11th Cir. 2008).  When a prison policy or regulation impinges on inmates' constitutional rights, a court must determine if the regulation or policy is reasonably

13

related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). There are four factors used to determine whether a prison regulation is reasonable: (1) a "'valid, rational connection' between the prison regulation and the legitimate interest put forward to justify it"; (2) "whether there are alternative means of exercising the right"; (3) "the impact that the accommodation of the asserted constitutional right will have on guards and other inmates"; and (4) "the absence of ready alternatives." *Id.*

The Court finds that the opening and scanning of legal mail for a short period after a major security violation is reasonably related to legitimate penological interests. The brief change in mail screening policy, after a major security violation and while a new mail facility was built to better accommodate the risk that legal mail could contain weapons, meets the *Turner* factors and Plaintiff has not shown a constitutional violation. Moreover, Plaintiff has not demonstrated that the opening of his mail was a deliberate act of censorship, caused him to miss a court deadline, or prejudiced his legal actions in any way. *See Davis v. Good*, 320 F.3d 346, 351-52 (2d Cir. 2003).

Regarding Plaintiff's claim that he was not allowed to receive newspaper clippings in the mail, Defendants assert that Plaintiff has not demonstrated that they were aware of, or have any subjective knowledge regarding these matters. There is no specific policy prohibiting newspaper clippings, postcards, or internet printouts. However, the Jail will returns items that contain material on constructing weapons, explosives, advocating racial, religious, or national hatred, locksmith manuals, materials explaining the construction of electronic devices that could aid in escape, material that advocates illegal manufacturing

or use of drugs or alcohol, material written in code, and sexually explicit material (Doc. No. 98, Ex. 5). Plaintiff has not stated a viable claim for relief against Defendants as he has not shown that any of the items reached the Jail and were impermissibly rejected. Moreover, Plaintiff has not alleged that Defendants were the officers that viewed and rejected the items. Plaintiff has not shown that Defendants are subject to liability in their supervisory capacity. Plaintiff has not demonstrated that a violation of his First Amendment rights occurred.

### 3.    *Access to Media*

Plaintiff alleges that his rights to access the media have been violated because the Jail stopped television service on February 17, 2009 (Doc. No. 86 at 17). Instead of broadcasting local television stations, the Jail now plays educational shows via DVD or VCR. *Id.* Plaintiff also states that inmates are not allowed newspapers. *Id.*

Plaintiff has not demonstrated a constitutional violation has occurred, as inmates do not have a constitutional right to watch television. *Taylor v. Franklin*, case no. 2:09-cv-06-ID, 2010 WL 432195, at *1 (M.D. Ala. Feb. 3, 2010) (citing *Scheanette v. Dretke*, case no. 05-41628, 2006 WL 2474486, at *1 (5th Cir. Aug. 28, 2006) and *Elliott v. Brooks*, case nos. 98-1470 and 98-8032, 1999 WL 535909, at *1 (10th Cir. July 20, 1999)). Furthermore, inmates are allowed to subscribe to newspapers and publications, although publications that are subversive will be banned (Doc. No. 98, Ex. 5).

To the extent Plaintiff has alleged that he can no longer receive newspapers or publications due to the Jail's imposition of a daily subsistence fee against inmates, his claim

also fails.  Sections 951.032 and 951.033, Florida Statutes, permit county and municipal detention centers to recover the subsistence costs and medical expenses incurred by prisoners.

Plaintiff is not challenging the constitutionality of the Florida laws but instead complains of the laws' application to him and the withdrawal of money from his inmate account to pay these subsistence fees.  If Plaintiff has alleged a deprivation of property claim, the Court notes that Plaintiff does have a protected property interest in any funds deposited into his account. *Willis v. Charlotte County Jail*, case no. 2:07-cv-551-FtM-29DNF, 2007 WL 3334190, at *2 (M.D. Fla. Nov. 9, 2007) (citing *Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989)).  However, Plaintiff's due process rights in the instant case are not violated as Plaintiff can challenge any charge assessed against him by filing a grievance. *Id.* (citing *Solomos v. Jenne*, 776 So. 2d 953 (Fla. 4th DCA 2000) (stating that inmates are put on notice that they can challenge withdrawal of funds from their inmate account through a jail's grievance procedure)).  Plaintiff has not alleged that he does not have an adequate post-deprivation remedy, thus he has not stated a constitutional violation. *See Charlotte*, 2007 WL  2007 WL 3334190, at *2; *see also Newson v. Highlands County Jail*, case no. 09-14059-CIV, 2009 WL 1515093, at *5 (S.D. Fla. May 29, 2009).

### 4.     *Retaliation*

Finally, Plaintiff alleges that he was transferred from the medium security area of the Jail to the maximum security area of the Jail in retaliation for filing his civil rights

16

complaint (Doc. No. 86 at 36).   Moreover, Plaintiff contends that the Jail took away television privileges in retaliation for his filing of the instant action.   *Id.* at 37.

"A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation and citation omitted).   However, conclusory allegations of retaliation are insufficient to state a claim under § 1983.   *See Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993); *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987).   The prisoner must sufficiently allege facts establishing that the actions taken against him were in retaliation for engaging in a protected activity.   *See Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986).   A prisoner must show more than his personal belief that he is the victim of retaliation.   *See Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Defendants attest that upon his arrival at the Jail, Plaintiff was classified as a maximum security inmate because of a prior escape (Doc. No. 98, Ex. 2).   Defendants note that until additional structures were built, the Jail was significantly more overcrowded during 2007 and early 2008.   (Doc. No. 98 at 13, Ex. 1 and 2).   As such, Plaintiff was moved from a medium security block in the Jail after additional structures were built to accommodate the overcrowding.   *Id.*   Plaintiff has not demonstrated that he was moved due to the filing of this action, as he was always classified as a maximum security inmate, but could not be housed in that area due to overcrowding.

17

Furthermore, Plaintiff has not established that the cancellation of television broadcasting was the result of his lawsuit.  Defendant Jeter attests that in February 2009, commercial analog television programming ceased due to changes in Federal Communications Commission regulations, when all television became digital.  Ex. 2 at 3. The Jail determined that it would not be beneficial to switch over to digital broadcast television, in light of the fact that inmates often fight over channel selections and controversial shows and gamble on sporting events.  *Id.* The Court finds that Plaintiff has not demonstrated that a constitutional violation has occurred with regard to these claims.

### C.      *Eighth and Fourteenth Amendment Claims*

Plaintiff contends that Defendants have committed numerous Eighth and Fourteenth Amendment violations.  Plaintiff challenges numerous conditions of his confinement, such as the personal hygiene products he receives,  the lack of contact visits with family members, the cleanliness of his cell, the food served, the educational programs available, and the transportation to and from court.  Moreover, Plaintiff states that the Jail does not provide adequate medical and dental care.  Plaintiff also contends that he was deprived of his personal property consisting of sneakers, sandals, and gym shorts.  Finally, Plaintiff alleges that the Jail fails to screen DOC prisoners that are transferred to the Jail and fails to protect inmates from harm caused by those prisoners.

### 1.      *General Jail Conditions*

The Eighth Amendment governs the treatment a prisoner receives in prison and the conditions under which he is confined. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Only the "'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citations omitted)). Claims challenging conditions of confinement under the Eighth Amendment must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1571-72 (11th Cir. 1985). Pursuant to the Eighth Amendment, prisoners may not be deprived of basic human needs, such as food, clothing, shelter, sanitation, medical care, and reasonable safety. *Helling*, 509 U.S. at 32.

The court employs a two-part analysis in determining whether the conditions of a plaintiff's confinement violate the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 8 (1992). First, the condition must be objectively and sufficiently serious or "extreme" to show that it "pose[s] an unreasonable risk of serious damage to [a plaintiff's] future health or safety." *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir.2004) (quotation omitted). Second, plaintiff must come forward with some factual allegations to show that the defendant official "acted with a sufficiently culpable state of mind." *Id.* (citing *Hudson*, 503 U.S. at 8). Negligence is not enough. *Chandler*, 379 F.3d at 1289. Rather, a plaintiff must

19

show the defendant acted with "deliberate difference." *Id.* Significantly, a defendant must (1) have subjective knowledge of a risk of harm; (2) disregard that risk; and (3) engage in conduct that rises above mere negligence. *Id.* at 1290 (citing *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003)).

Plaintiff's claim that the Jail has failed to provide him with shampoo does not rise to the level of a constitutional violation. *See Scher v. Purkett*, 758 F.Supp. 1316, 1316 (E.D. Mo. 1991) ("Items such as shampoo and deodorant may enhance one's beauty, appearance, and level of personal hygiene;" however, the denial of these toiletries does not violate the Constitution.) Moreover, Plaintiff's claim that washing his hair with soap, which leaves his scalp dry and itchy, does not state a physical injury that is greater than a de minimis injury. 42 U.S.C. § 1997e(e); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002) (a prisoner's claim must be accompanied by allegations of physical injuries that are greater than de minimis); *see also Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (lack of personal items, discontinuance of showers twice daily, among other complaints, amount to de minimis injuries); *Brown v. Pierce*, case no. 05-1322, 2008 WL 619288, at * 5 (C.D. Ill. Mar. 4, 2008) ("several courts have held that a rash resulting from cell conditions is a *de minimis* injury that does not rise to the level of a constitutional violation") (citations omitted).

Further, Plaintiff's argument that his cell does not get adequate natural lighting does not state a constitutional violation. Although "[a]dequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment," *Hoptowit*

20

*v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985), Petitioner is not challenging the amount of light his cell receives from overhead lighting and instead just challenges the lack of natural light.  Defendants note that Plaintiff has access to natural light in the recreational area of the Jail (Doc. No. 98 at 7-8).  Plaintiff has not demonstrated that Defendants are depriving him of all light.  *See Gaustad v. Frank*, case no. 05-C-187, 2007 WL 528199, at *10 (E.D. Wisc. Feb. 15, 2007) (granting summary judgment as to the plaintiff's claim that he was not receiving adequate lighting where the plaintiff had a frosted window in his cell through which he could not tell whether it was nighttime or daytime and had in-cell overhead lights).

Next, Plaintiff alleges that the Jail violated his right to have contact visits with his mother.  However, this claim fails as due process does not guarantee an inmate the right of unfettered visitation.  *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460-61 (1989); *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980).  "[T]he Constitution does not require that [pretrial] detainees be allowed contact visits when responsible, experienced administrators have determined that such visits will jeopardize the security of the facility." *Block v. Rutherford*, 468 U.S. 576, 589 (1984).  In this case, Defendant Jeter notes that the Jail does not have the facilities or manpower to permit contact visits; however, Jail policy allows visitation seven days per week as long as the visit is scheduled 72 hours in advance (Doc. No. 98 at 5, Ex. 5 at 1).  Inmates are allowed 5 visits per week and the visits last up to 45 minutes.  Ex. 5 at 1.  Plaintiff had three visits with his mother in 2009 (Doc. No. 98 at

6).  Plaintiff has not demonstrated that the Jail, by prohibiting contact visits, has violated a constitutional right.

Plaintiff contends that he is deprived of meaningful exercise because he has no sneakers.  Although Plaintiff's lack of sneakers may limit his ability to exercise, there is no indication that Plaintiff has been deprived of all opportunities for meaningful exercise or that his health has been impacted as a result.  *See Wallace v. Carver*, 2:06-cv-780-DS, 2008 WL 4154413, at *3 (D. Utah Sept. 2, 2008) (finding that the time the plaintiff was without sneakers did not deprive him of meaningful exercise).  Plaintiff has not established that Defendants have violated his constitutional rights.

Plaintiff's next argument is that his cell is unsanitary and the Jail does not give him cleaning supplies.  Plaintiff admits that he is provided with a broom, mop, and mop bucket, but states that the water is dirty by the time he receives it.  Plaintiff also complains that he does not receive a toilet brush and toilet bowl cleaner.  In his affidavit James Dodson, Shift Commander at the Jail, attests that each inmate housing area receives cleaning supplies three times daily (Doc. No. 98, Ex. 3 at 2).  The supplies offered and made available consist of: a mop and mop bucket, broom, toilet bowl brush, and appropriate chemicals to disinfect and sanitize the cells.  *Id.* The cleaning supplies are put in the housing area in the morning between 7:00 a.m. and 9:30 a.m.  *Id.*  The supplies are placed in the housing areas again at approximately 12:00 p.m. and 7:00 p.m.  *Id.*  Dodson notes that if the water in the mop bucket, which contains a cleaning or disinfectant solution, becomes dirty, inmates may empty the bucket and request that the bucket be replenished.  *Id.* at 2-3.

22

Inmates may not keep mops, brooms, and toilet brushes as they can and have been used as weapons. *Id.* at 3.

Plaintiff's allegations regarding the cleanliness of his cell and the cleaning supplies that he receives do not rise to the level of an Eighth Amendment violation. Plaintiff has not shown that the conditions at the Jail are sufficiently "extreme" to show that they pose a risk to his health. *See McBride v. Crews*, case no. 2:06-cv-621-FtM-29DNF, 2008 WL 169731, at *6 (M.D. Fla. 2008) (finding no Eighth Amendment violation where inmates were provided a mop, bucket, broom, dust pan, scrub brush, toilet bowl brush, disinfectant, and general purpose cleaner three times daily). The Court finds that Plaintiff is provided with the appropriate cleaning supplies and disinfectants to keep his cell clean and thus he has not shown that Defendants have violated his constitutional rights.

Plaintiff also complains about the meals provided by the Jail. Plaintiff specifically states that the meals contain too much bread and thus are lacking in nutrition. Moreover, Plaintiff takes issue with the "lack of menus" and the fact that he has been fed the same foods for three years. The Eighth Amendment requires jails to provide inmates with meals that contain sufficient nutritional value to preserve health. *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977). Plaintiff's allegations that take issue with portion sizes of the food and the fact that he receives the same food multiple times, with too much bread, do not amount to an Eighth Amendment violation. *See, e.g.*, *LeMaire v. Maass*, 12 F.3d 1444, (9th Cir. 1993) (stating food served by a jail need not be tasty, aesthetically pleasing, or hot but merely

needs to maintain adequate health) (citing *Cunningham v. Jones*, 653, 659-60 (6th Cir. 1977) and *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985)).

Plaintiff's next contention is that the Jail has failed to provide inmates with educational or recreational pursuits. However, this claim fails as inmates have no right to participate in educational or rehabilitative programs. *See McKune v. Lile*, 536 U.S. 24, 39 (2002); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976). Thus, Plaintiff has not established that his constitutional rights were violated.

Plaintiff also argues that the Jail does not provide pillows to inmates. First, Defendants attest that Plaintiff has a newer style mattress, which has a built-in pillow (Doc. No. 98 at 11). Second, Defendants state that loose pillows are not permitted as they are used by inmates as weapons to suffocate other inmates. *Id.* Plaintiff has not demonstrated that this condition of his confinement is so extreme that it poses an unreasonable risk to his health, as he has a pillow and has not shown that extra pillows are medically warranted.

Next the Court finds Plaintiff's assertions that the transportation to and from the jail is unsafe and painful do not rise to the level of cruel and unusual punishment. While Plaintiff complains about the lack of seatbelts during transport, the Eleventh Circuit has determined that transporting prisoners in vans without seatbelts does not amount to a constitutional violation. *Smith v. Sec'y, Dept. of Corr.*, 252 F. App'x 301, 304 (11th Cir. 2007) (stating that riding in a van without seats, seat belts or windows is not sufficiently intolerable or a sufficiently risky condition). Moreover, to the extent Plaintiff challenges the use of leg irons while being transported, he has not shown that this use of force "shocks

24

the conscience." *Fennell v. Gilstrap*, 559 F.3d 1212, 1217 (11th Cir. 2009) ("A jailor's use of force . . . is excessive . . . if it shocks the conscience," however, "[t]he use of force does not shock the conscience if it is applied in a good-faith effort to maintain or restore discipline") (internal quotations omitted).  The use of leg irons while transporting an inmate from the Jail to court does not shock the conscience as the amount of force used is not excessive.

Plaintiff's final contention is that the Jail does not provide enough clothing to inmates.  Plaintiff states that a uniform, t-shirt and pair of underwear is not adequate.  The Eighth Amendment "imposes a duty on prison officials to provide humane conditions of confinement, including adequate clothing."  *Green v. Sec'y for Dept. of Corr.*, 212 F. App'x 869, 872 (11th Cir. 2006) (internal quotation omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  However, Plaintiff has not established that a jail is required to provide an inmate with more than one uniform, one t-shirt, and one pair of underwear.  Plaintiff has access to laundry services, and uniforms are laundered twice a week (Doc. No. 98, Ex. 5 at 5).  Furthermore, inmates may request replacement uniforms if their uniform becomes dirty.  Ex. 2 at 2.  Plaintiff's complaint about the amount of clothing he is provided only rises to the level of discomfort and does not indicate a condition that is sufficiently extreme to show it poses a serious risk to Plaintiff.  *See Woods v. Morris*, case no. 04-1440, 2007 WL 2792154, at *17 (C.D. Ill. Sept. 18, 2007) (inmate's complaint that he only had one uniform, t-shirt, and one pair of underwear, and was not given a replacement uniform while his uniform was laundered, did not rise to the level of a constitutional violation).

25

Plaintiff has not demonstrated that any of the above complaints pose an unreasonable risk to his health or safety. Moreover, Plaintiff cannot show that Defendants acted with deliberate indifference, or that they subjectively knew of any risk of harm and disregarded that risk.

### 2.    *Deliberate Indifference to Medical Needs*

Plaintiff contends that the Jail does not offer meaningful medical or dental services or care. Specifically, Plaintiff alleges that he has loose teeth, bleeding gums and that his gum line is drastically receding. Plaintiff states that he saw a Jail dentist who informed him that he had advanced gum disease. The dentist told him that the only treatment was to remove all of his teeth. Moreover, Plaintiff complains that it took numerous grievances to see a doctor about the fact that he has the beginnings of degenerative arthritis. To establish liability under § 1983 for inadequate medical treatment, a plaintiff must show that the failure to provide him medical care amounted to cruel and unusual punishment under the Eighth Amendment of the United States Constitution. To rise to this level, a plaintiff must show that his inadequate care arose from a "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). As recognized by the Eleventh Circuit Court of Appeals, to demonstrate deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). "First, a plaintiff must set forth evidence of an objectively serious medical need. Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* (citations omitted).

The Eleventh Circuit has described a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citations omitted), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Plaintiff's claims must fail as he has not sued the proper parties.  Defendant Jeter attests that she has no knowledge of, and is not involved in the decisionmaking regarding medical or dental issues (Doc. No. 98, Ex. 2 at 2).  Moreover, Defendant Parker states that he has no knowledge of any policy that has resulted in lack of medical or dental care.  Ex. 1 at 3.  The Jail has a contract with Armor Correctional Health Services, Inc. and Armor provides the employees who work in the medical department of the Jail.  *Id.* at 1.  Plaintiff cannot establish an Eighth Amendment violation as there is no indication that Defendants acted with deliberate indifference to a serious medical need, as they are not involved in the evaluation or treatment of any of Plaintiff's dental or medical issues.

### 3.    *Deprivation of Personal Property*

Plaintiff alleges that the Jail violated his constitutional rights when it confiscated his sneakers, sandals, and gym shorts.  Plaintiff filed three grievances related to this matter and was informed that items that are not authorized are confiscated and either placed with his property being held until release or discarded (Doc. No. 86, Ex. G-1, G-2, & G-3).  Defendants note that Jail policy is to confiscate unauthorized possessions (Doc. No. 98 at 8).

Random, unauthorized deprivations of property do not violate procedural due process if the state provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 451 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). However, an authorized, intentional deprivation of property is actionable pursuant to the Due Process Clause. *Hudson*, 468 U.S. at 532 n.13; *Parratt*, 451 U.S. at 543-44. An authorized or intentional deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436-37 (1982). As with unauthorized deprivations of property, "post-deprivation remedies may be acceptable even in contexts involving a state policy or procedure." *Carcamo v. Miami-Dade County*, 375 F.3d 1104, 1106 n.4 (11th Cir. 2004) (stating the acceptability of post-deprivation process turns on the feasibility of pre-deprivation process, not the existence of a policy or practice) (citing *Rittenhouse v. DeKalb County*, 764 F.2d 1451, 1455 (11th Cir. 1985)).

In this case the Jail has a policy prohibiting certain types of shoes and gym shorts. The policy is listed in the inmate handbook given to all inmates (Doc. No. 98, Ex. 5). The policy states that only gray gym shorts are allowed that do not have strings, zippers, buttons or pockets. *Id.* Moreover, only sneakers purchased from the commissary and shower "slaps" are allowed. *Id.* The policy warns that if any items that are not included on the list of authorized possessions are found, the Jail will consider such items contraband and will remove the items. *Id.* Defendant Jeter notes that only approved clothing is allowed because inmates try to hide contraband, including weapons and drugs, within the

shoes or clothing (Doc. No. 98, Ex. 2 at 7).  In this case, the Jail policy acts as pre-deprivation notice to inmates that unauthorized items in their possession will be confiscated.

To determine what level of pre-deprivation process is needed, the Court must consider several factors: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *Camarco*, 375 F.3d at 1106 (stating that cases in which the plaintiff seeks to avoid the *Parratt-Hudson* doctrine on the basis of an established state policy or practice are governed by the three-factor analysis set forth in *Mathews*) (citing *Zinermon v. Burch*, 494 U.S. 113, 127-39 (1990)).

In the instant case, it is clear that Plaintiff has a property interest in his gym shorts and shoes.  However, the policy in place ensures that there is a low risk of erroneous deprivation, as the Jail policy lists the type of shoes and shorts one may possess.  If there is an accidental erroneous deprivation, inmates are free to file grievances with the Jail.  Furthermore, requiring the Jail to hold a hearing prior to confiscation of unauthorized items would likely be too burdensome, due to the additional time and money the Jail would have to spend.  Moreover, due to safety concerns within a jail and the risk of hiding contraband within unauthorized items, it appears no other pre-deprivation process would

be feasible or necessary for correctional officers.  The Eleventh Circuit Court of Appeals has held that a judicial post-deprivation cause of action satisfies due process in other situations where the private interest involved is weighty.  *See McKinney v. Pate*, 20 F.3d 1550, 1565 (11th Cir. 1994) (*en banc*) (involving plaintiff's interest in employment); *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991) (involving retention of plaintiff's automobile).

Furthermore, the State of Florida has provided inmates with an adequate post-deprivation remedy. *See Lindsey*, 936 F.2d at 561 ("as long as *some* adequate postdeprivation remedy is available, no due process violation has occurred.") (emphasis in original). Prisoners may file a tort claim action in the state court in order to recover damages for property losses.  *See* § 768.28, Fla. Stat. (2008).  Plaintiff has not demonstrated that Defendants committed a constitutional violation, and thus his deprivation of property claim must fail.

### 4.      *Failure to Protect*

Plaintiff's final claim is that the Jail violated his constitutional rights when it failed to screen the DOC prisoners that are transferred from the state correctional institutions to the Jail.  Plaintiff states that these prisoners were "mixed in" with regular inmates at the Jail and as a result he was beaten by a DOC prisoner.

In order to show Eighth Amendment liability for failure to prevent harm, a prisoner must establish that prison officials acted with deliberate indifference to a substantial risk of serious harm to an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  Accordingly,

"prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id*. 833.

"It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834. According to the Eleventh Circuit Court of Appeals,

> [a]n Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. A plaintiff must also show that the constitutional violation caused his injuries.

*Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (citations omitted); *see also Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (recognizing the same standard for pretrial detainee claims made under the Fourteenth Amendment). Thus, in order to prevail on his Eighth Amendment claim, Plaintiff must establish three elements: (1) that Defendants were subjectively aware of a substantial risk of serious harm; (2) that Defendants did not respond reasonably to such risk; and (3) that the constitutional violation caused his injuries. Mere negligence alone is not sufficient to support an Eighth Amendment violation and, therefore, is not actionable under § 1983. *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("Merely negligent failure to protect an inmate from attack does not justify liability under section 1983."); *see also Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("where a government official is merely negligent in causing the injury, no procedure for compensation is constitutionally required").

Plaintiff has not demonstrated an Eighth Amendment violation with respect to this claim. Although Plaintiff states that the Jail placed a DOC prisoner in his cell block without

screening the prisoner for violence, Plaintiff fails to disclose that he is a maximum security inmate at the Jail, and the DOC inmate was also a maximum security prisoner. Furthermore, there is no indication that Defendants were aware of a substantial risk of serious harm and that they did not reasonably respond to the risk.  Defendant Jeter notes that an incident report was filed on July 13, 2008, regarding the fight between Plaintiff and the DOC prisoner (Doc. No. 98, Ex. 2 at 8).  The incident report states that a fight broke out between Plaintiff and inmates Jastrow and McDuffie.  *Id.*  Plaintiff was found with blood covering his facial area.  *Id.* Plaintiff and inmate McDuffie both smelled of alcohol.  *Id.* Inmate Jastrow told correctional officers that he attempted to break up the fight.  *Id.* Plaintiff made the statement that he and McDuffie fought over the alcohol or "buck" that was in the cell. *Id.*  McDuffie accused Plaintiff of taking the "buck" and they then physically fought. *Id.*

Plaintiff's allegations fall short of satisfying the three elements required to establish a constitutional violation.  First, Plaintiff has not demonstrated that correctional officers knew inmate McDuffie was dangerous but placed him in Plaintiff's housing block after disregarding the risk to the other inmates.  The record shows that Plaintiff and McDuffie drank alcohol together and later McDuffie accused Plaintiff of stealing the alcohol.  A physical fight ensued. This indicates not a subjective awareness on the part of Defendants, but instead mere negligence in Defendants' failure to protect Plaintiff.   A subjective awareness requires a showing that Defendants were aware of a "particularized threat or fear felt [by plaintiff]." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003).  Plaintiff's

allegations do not rise to the level of establishing a nexus between Defendants' actions and Plaintiff's assault.

In sum, Plaintiff has failed to allege any constitutional violations that occurred. Therefore, the Court finds that Defendants are entitled to qualified immunity. The motion to dismiss, or alternatively, for summary judgment is granted.

### D.      Official Capacity Claim Against Defendant Jeter

Defendant Jeter alleges that because she does not have final policymaking authority for the Jail that Plaintiff cannot demonstrate that she is liable in her official capacity, to the extent he has alleged such a claim. The Court agrees.

 Governmental entities may be liable when the alleged constitutional violation resulted from the execution of the policy or custom of the governmental entity. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.") The policy or custom must be the "moving force" behind the constitutional deprivation. *Id*. at 694-95.

Plaintiff has not come forward with any evidence that Defendant Jeter instituted a custom or policy which resulted in the wrongs asserted in the complaint. In her affidavit, Defendant Jeter notes that while she may recommend changes to existing policies and procedures, she does not have final approval or authority over the Jail policies (Doc. No.

98, Ex. 2 at 1).  Thus, to the extent Defendant Jeter is sued in her official capacity, she is entitled to summary judgment.

###### E.      *Supervisory Liability Against Defendant Parker*

An examination of the complaint reveals that the suit may have been brought against Defendant Parker in his individual capacity; consequently, in an abundance of caution, the Court will determine whether this Defendant is liable in his supervisory capacity.

None of the allegations in the complaint refer to any personal involvement on the part of Defendant Parker.  Any conceivable liability on the part of Defendant Parker would be based on the theory of *respondeat superior*.  However, supervisors cannot be held liable for acts of employees *solely* based on *respondeat superior*.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985) (stating "[s]upervisory liability is not limited, however, to those incidents in which the supervisor personally participates in the deprivation . . . . There must be a causal connection between the actions of the supervisory official and the alleged deprivation") (citations omitted).  A causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to take corrective action" or "when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (citations omitted).

The Court finds that Plaintiff has failed to show that Defendant Parker personally participated in any alleged unconstitutional conduct, or that there is a causal connection between the Sheriff and the alleged constitutional deprivation. Defendant Parker cannot be held liable in his individual capacity.

## V.   *Conclusion*

The Court finds that Defendants are entitled to summary judgment as a matter of law on Plaintiff's claims. Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion to Dismiss or Alternatively, Motion for Summary Judgment (Doc. No. 98) is **GRANTED**. Defendants Jack Parker and Susan Jeter are entitled to summary judgment as a matter of law on Plaintiff's claims.

2.   The Clerk of Court is directed to enter a judgment in favor of Defendants and against Plaintiff.

3.   The Clerk of Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 15th day of September, 2010.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies to:
pslc 9/7
Counsel of Record
James Gregory Poulin